THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

## MEMORANDUM DECISION AND ORDER GRANTING IN PART
## AND DENYING IN PART MOTIONS TO DISMISS AND DISQUALIFY

District Judge David Nuffer (sitting under designation from the Tenth Circuit Court of Appeals
on Motions to Dismiss Indictment and Disqualify United States Attorney)

UNITED STATES OF AMERICA, Plaintiff,

v.

| | |
|---|---|
| RAFAEL RAMIREZ-MARTINEZ, Defendant. | Case No. 1:22-cr-01721-KWR |
| EDISON BRADY, Defendant. | Case No. 1:24-cr-01105-MLG |
| ALI ALHIGAIMI ESQUEDA, Defendant. | Case No. 1:25-cr-03250-JB |
| BRYSON CHEE, Defendant. | Case No. 1:25-cr-03353-JB |
| JOSHUA BLACK, Defendant. | Case No. 1:25-cr-03354-MLG |
| RYAN NOLAN KEE, Defendant. | Case No. 1:25-cr-03356-KG |
| JULIAN GUNTHER, Defendant. | Case No. 1:25-cr-03366-JB |
| JOSE MAGANA GARCIA, Defendant. | Case No. 1:25-cr-03549-JB |
| SEALED, Defendant | Case No. 1:25-cr-03837-MLG |
| LEON JEREMY POELLNITZ, Defendant. | Case No. 1:25-cr-03858-KG |
| JOHN C. DOMINGUEZ, Defendant. | Case No. 1:25-cr-03864-KG |
| RICHARD SEDILLO, Defendant. | Case No. 1:25-cr-03865-JB |
| MARTY LOPEZ, Defendant. | Case No. 1:25-cr-04139-DHU |
| MABELENE GREY, Defendant. | Case No. 1:25-cr-04141-KG |
| AZARIAH CLEVELAND, Defendant. | Case No. 1:25-cr-04145-DHU |
| DESIREE ARCHULETA, Defendant. | Case No. 1:25-cr-04412-DHU |
| KENDALL BENALLY, Defendant. | Case No. 1:25-cr-04413-KG |
| ERIC SHAUN MCAFEE, Defendant. | Case No. 1:25-cr-04418-MLG |
| JACOB EZEKIEL MARTINEZ, Defendant. | Case No. 2:25-cr-03253-SMD |

Defendants have criminal cases pending against them in the District of New Mexico.[1] In

each of the cases, Defendants filed nearly identical motions seeking dismissal of their

---

[1] Indictment ("Ramirez-Martinez Indictment"), ECF no. 2 in *United States v. Ramirez-Martinez*,
1:22-cr-01721-KWR (D.N.M.), filed Oct. 25, 2022; Indictment ("Brady Indictment"), ECF no. 12 in *United States v.
Brady*, 1:24-cr-01105-MLG (D.N.M.), filed Aug. 13, 2024; Indictment, ECF no. 5 in *United States v. Esqueda*,
1:25-cr-03250-JB (D.N.M.), filed Aug. 20, 2025; Indictment, ECF no. 14 in *United State v. Chee*, 1:25-cr-03353-JB
(D.N.M.), filed Aug. 26, 2025; Indictment, ECF no. 15 in *United States v. Black*, 1:25-cr-03354-MLG (D.N.M.),
filed Aug. 26, 2025; Indictment, ECF no. 15 in *United States v. Kee*, 1:25-cv-03356-KG (D.N.M.), filed Aug. 26,

indictments and disqualification of the United States Attorney ("Motions").[2] The Motions are

premised on the argument that Ryan Ellison (who claims to be the Acting United States Attorney

---

2025; Indictment, ECF no. 2 in *United States v. Gunther*, 1:25-cr-03366-JB (D.N.M.), filed Aug. 26, 2025; Indictment, ECF no. 11 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Sept. 9, 2025; Information, ECF no. 4 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Sept. 23, 2025; Indictment, ECF no. 16 in *United States v. Poellnitz*, 1:25-cr-03858-KG (D.N.M.), filed Sept. 23, 2025; Indictment, ECF no. 14 in *United States v. Dominguez*, 1:25-cr-03864-KG (D.N.M.), filed Sept. 23, 2025; Indictment, ECF no. 2 in *United States v. Sedillo*, 1:25-cr-03865-JB (D.N.M.), filed Sept. 23, 2025; Indictment, ECF no. 2 in *United States v. Lopez*, 1:25-cr-04139-DHU (D.N.M.), filed Oct. 7, 2025; Indictment, ECF no. 4 in *United States v. Grey*, 1:25-cr-04141-KG (D.N.M.), filed Oct. 7, 2025; Indictment, ECF no. 13 in *United States v. Cleveland*, 1:25-cr-04145-DHU (D.N.M.), filed Oct. 7, 2025; Indictment, ECF no. 2 in *United States v. Archuleta*, 1:25-cr-04412-DHU (D.N.M.), filed Oct. 21, 2025; Indictment, ECF no. 22 in *United States v. Benally*, 1:25-cr-04413-KG (D.N.M.), filed Oct. 21, 2025; Indictment, ECF no. 2 in *United States v. McAfee*, 1:25-cr-04418-MLG (D.N.M.), filed Oct. 21, 2025; Indictment, ECF no. 13 in *United States v. Martinez*, 2:25-cr-03253-SMD (D.N.M.), filed Aug. 20, 2025.

2 Defendant's Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 111 in *United States v. Ramirez-Martinez*, 1:22-cr-01721-KWR (D.N.M.), filed Sept. 17, 2025; Defendant's Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 100 in *United States v. Brady*, 1:24-cr-01105-MLG (D.N.M.), filed Sept. 16, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 21 in *United States v. Esqueda*, 1:25-cr-03250-JB (D.N.M.), filed Oct. 1, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 20 in *United State v. Chee*, 1:25-cr-03353-JB (D.N.M.), filed Sept. 30, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 20 in *United States v. Black*, 1:25-cr-03354-MLG (D.N.M.), filed Sept. 10, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 19 in *United States v. Kee*, 1:25-cv-03356-KG (D.N.M.), filed Sept. 16, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, EFC no. 16 in *United States v. Gunther*, 1:25-cr-03366-JB (D.N.M.), filed Sept. 15, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 16 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Sept. 12, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 22 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Oct. 7, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 21 in *United States v. Poellnitz*, 1:25-cr-03858-KG (D.N.M.), filed Oct. 1, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 18 in *United States v. Dominguez*, 1:25-cr-03864-KG (D.N.M.), filed Oct. 14, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 19 in *United States v. Sedillo*, 1:25-cr-03865-JB (D.N.M.), filed Nov. 3, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 15 in *United States v. Lopez*, 1:25-cr-04139-DHU (D.N.M.), filed Oct. 30, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 20 in *United States v. Grey*, 1:25-cr-04141-KG (D.N.M.), filed Nov. 3, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 18 in *United States v. Cleveland*, 1:25-cr-04145-DHU (D.N.M.), filed Oct. 16, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 17 in *United States v. Archuleta*, 1:25-cr-04412-DHU (D.N.M.), filed Nov. 3, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 26 in *United States v. Benally*, 1:25-cr-04413-KG (D.N.M.), filed Nov. 4, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 17 in *United States v. McAfee*, 1:25-cr-04418-MLG (D.N.M.), filed Nov. 3, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 20 in *United States v. Martinez*, 2:25-cr-03253-SMD (D.N.M.), filed Sept. 10, 2025 (collectively, "Motions").

Because the Motions, subsequent briefing on the Motions, and exhibits in each case are substantively identical (*see* Motion Management Order, ECF no. 31 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Sept. 24, 2025), this Memorandum Decision and Order will cite only to the Motion, subsequent briefing, and exhibits filed in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), from this point on. Supplemental briefs filed in individual cases, which address case-specific issues, will be cited to as necessary.

for the District of New Mexico[3]) is not validly acting as United States Attorney.[4] Defendants seek to void the actions of the United States Attorney's Office ("USAO") occurring after the date of Mr. Ellison's resignation as interim United States Attorney, August 13, 2025, including the decisions to file and continue to pursue charges against them because Mr. Ellison lacks lawful authority to exercise the functions and duties of a United States Attorney.[5] Defendants also seek to disqualify Mr. Ellison, and any attorneys acting under his direction, from any role in supervising and participating in their cases.[6] The USAO opposes the Motions, arguing that Mr. Ellison is the validly serving as Acting United States Attorney under 5 U.S.C. § 3345(a),[7] and that even if he were not, neither dismissal nor disqualification is an appropriate remedy for Defendants.[8]

This consolidated Memorandum Decision and Order resolves Defendants' Motions. The Motions are GRANTED in part because Mr. Ellison is not validly acting as United States Attorney for the District of New Mexico. The Motions are DENIED in part because Defendants fail to demonstrate that dismissal of their charges or disqualification of Mr. Ellison (or other attorneys within the USAO) are appropriate remedies.

---

[3] Amended Response in Opposition to Defendant's Motion to Dismiss Indictment and Disqualify United States Attorney ("Responses") at 1, ECF no. 35 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Oct. 14, 2025.

[4] Motions at 1-2, 5-22.

[5] *Id*. at 22-26.

[6] *Id*.

[7] Responses at 1-2, 5-13, 18-19.

[8] *Id*. at 13-18, 19-23.

**Contents**

1    CONSTITUTIONAL AND STATUTORY CONTEXT ........................................ 5
      1.1    The Appointments Clause and the Excepting Clause ............................ 5
              1.1.1    The Appointments Clause ........................................................ 5
              1.1.2    The Excepting Clause ............................................................. 6
      1.2    The Office of United States Attorney ................................................. 7
      1.3    The Historical Tensions between Congress and the Executive Branch ................ 8
              1.3.1    Early Statutory Implementation of the Excepting Clause in the Vacancies
                        Act      ........................................................................... 9
              1.3.2    Congress Responds to DOJ Repudiation of Vacancies Act – 1973 - 1989 ..
                        ............................................................................... 10
              1.3.3    The 1998 Federal Vacancies Reform Act Responds to Executive Branch
                        Evasion of the Vacancies Act ................................................ 12
              1.3.4    2006 and 2007 Amendments of 28 U.S.C. § 546 ...................... 16
              1.3.5    Current Tensions Relating to the FVRA ...................................... 17
              1.3.6    Summary of Congressional and Executive Balancing ...................... 17
2    RELEVANT FACTS ................................................................................. 18
3    DISCUSSION ........................................................................................... 20
      3.1    Relief Sought by Defendants ............................................................ 20
      3.2    The Effect of the Statutes on Events in Timeline .............................. 22
              3.2.1    Alexander Uballez was Appointed and Resigned under 28 U.S.C. § 541  22
              3.2.2    On February 17, 2025, Holland Kastrin Became Acting United States
                        Attorney Under 5 U.S.C. § 3345(a)(1) ...................................... 23
              3.2.3    Mr. Ellison Was Validly Appointed Interim United States Attorney under
                        28 U.S.C. § 546(a) on April 17, 2025 ...................................... 26
              3.2.4    The August 14, 2025 Order Does Not Empower Mr. Ellison as Acting
                        United States Attorney ........................................................ 28
              3.2.5    The August 14, 2025, Order Has No Effect Under 28 U.S.C. §§ 509, 510,
                        or 515    ............................................................................ 34
              3.2.6    The August 14, 2025, Order Validly Designates Mr. Ellison as FAUSA as
                        of the Date of the Order ...................................................... 37
              3.2.7    The December 4, 2025, Order Does Not Authorize Mr. Ellison to Perform
                        the Functions of the United States Attorney, but Define the Scope of His
                        Functions as FAUSA .......................................................... 40
              3.2.8    Summary of the Quandary ...................................................... 42
      3.3    Remedies ........................................................................................ 43
              3.3.1    Dismissal of Defendants' Indictments and Charges is not a Proper Remedy
                        ............................................................................... 44
              3.3.2    Disqualification of Mr. Ellison or Other Attorneys in the USAO is not a
                        Proper Remedy ................................................................ 49
4    ORDER ................................................................................................... 52

# 1   CONSTITUTIONAL AND STATUTORY CONTEXT[9]

Before discussing the facts and resolving the issues raised in Defendants' Motions, the Constitutional and statutory setting must be explained. The issues presented arise in a context unfamiliar to most citizens, lawyers, and judges. The fundamental pillars of checks and balances among co-equal branches of the United States federal government are implicated.

Statutes central in the dispute are:

- 28 U.S.C. § 541 (providing for presidential appointment and Senate confirmation of United States Attorneys);

- 28 U.S.C. § 546 (providing for service of interim United States Attorneys);

- the Federal Vacancies Reform Act in 5 U.S.C. § 3345 *et seq*. and its predecessors (providing for service of Acting United States Attorneys); and

- 28 U.S.C. §§ 509, 510, and 515 (defining powers of the Attorney General).

## 1.1   The Appointments Clause and the Excepting Clause

### 1.1.1   The Appointments Clause[10]

"The 'manipulation of official appointments' had long been one of the American revolutionary generation's greatest grievances against executive power, because 'the power of appointment to offices' was deemed 'the most insidious and powerful weapon of eighteenth-century despotism.'"[11] Responding to that problem, the Framers of the Constitution devised the Appointments Clause.[12]

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United states, whose

---

[9] Section 1 relies heavily on material developed in the opinions in *United States v. Giraud*, 795 F. Supp. 3d 560 (D.N.J. 2025); *United States v. Garcia*, No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640 (D. Nev. Sept. 30, 2025); and *United States v. Ramirez*, No. 22-CR-573-FWS, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025).

[10] Section 1.1.1 is taken nearly verbatim from *Giraud*, 795 F. Supp. 3d at 573.

[11] *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 883 (1991) (citing G. Wood, *The Creation of The American Republic 1776–1787*, 79, 143 (1969)).

[12] U.S. Const. art. II, § 2, cl. 2.

> appointments are not herein otherwise provided for, and which shall be
> established by Law: but the Congress may by Law vest the Appointment of such
> inferior Officers, as they think proper, in the President alone, in the Courts of
> Law, or in the Heads of Departments.[13]

Through the Appointments Clause, the Constitution shares the power of appointments between

the legislative and executive branches. The Appointments Clause "default" rule is Presidential

nomination and Senatorial consent.[14] Offices subject to this rule are often called "PAS" offices.

The default rule combines the benefits of vesting the selection of officers in a single person[15]

with the "check upon a spirit of favoritism in the President" that "cooperation of the Senate"

offers.[16]

Thus, "[t]he Senate's advice and consent power is a critical 'structural safeguard of the

constitutional scheme,'"[17] protecting against unilateral appointment by the President of

"candidates who ha[ve] no other merit than that . . . of being in some way or other personally

allied to [the President], or of possessing the necessary insignificance and pliancy to render them

the obsequious instruments of [the President's] pleasure."[18]

### 1.1.2   The Excepting Clause[19]

In a complex government there will be many officials to appoint and, due to the division

of power, "[t]he constitutional process of Presidential appointment and Senate confirmation . . .

---

[13] *Id.*

[14] *Edmond v. United States*, 520 U.S. 651, 659-60 (1997).

[15] *See* The Federalist No. 76 (Alexander Hamilton), https://guides.loc.gov/federalist-papers/text-71-80 (last visited November 26, 2025) (discussing problems with selection of officials by an assembly).

[16] *Id.*

[17] *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017) (quoting *Edmond*, 520 U.S. at 659).

[18] The Federalist No. 76.

[19] The first paragraph of this section are taken nearly verbatim from *Giraud*, 795 F. Supp. 3d at 574.

can take time."[20] Anticipating this issue, the Framers added the "Excepting Clause" at the end of

the Appointments Clause:

> . . . but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.[21]

For "administrative convenience," the Excepting Clause permits Congress to either retain its

advice and consent role for inferior officers or allow their direct appointment by either the

President, a Department Head, or the courts.[22]

A critical issue in this case is whether the Senate has retained or relinquished (through a

statute complying with the Excepting Clause) its consent role regarding the method by which

Ryan Ellison was most recently appointed to act as United States Attorney for the District of

New Mexico. This Memorandum Decision and Order concludes Congress has not authorized the

method by which Mr. Ellison claims to be appointed.

The historical background cited in this Section 1 discusses the constitutional and political

history of statutes that have affected (or not actually affected) the office of United States

Attorney for the District of New Mexico in 2025. The remainder of the Memorandum Decision

and Order lays out the facts of the dispute and the effect of the statutes.

### 1.2    The Office of United States Attorney

The Judiciary Act of 1789 directed the President to appoint in each federal district "a

meet person learned in the law to act as an attorney for the United States."[23] The current statute

---

[20] *SW Gen.*, 580 U.S. at 293.

[21] U.S. Const. art. II, § 2, cl. 2.

[22] *Edmond*, 520 U.S. at 660; *United States v. Arthrex*, 594 U.S. 1, 12 (2021).

[23] § 35, 1 Stat. at 92.

similarly requires presidential appointment, and "the advice and consent of the Senate . . . ."[24] In the current statute Congress maintains its Appointments Clause right to consent to appointment of a United States Attorney, and does not employ the Excepting Clause.

### 1.3    The Historical Tensions between Congress and the Executive Branch

Not surprisingly, shared power leads to tensions, and reactive adjustments in the terms by which power is shared. Those in power "ultimately acting [in] self-interest; they will seek to accumulate [power], and in that process the older . . . system . . . will be disrupted and violated."[25] In a government which separates powers, each branch of government may encroach or retreat from a dominant position and react to other branches' cessions or assertions of power.

Experience and growth of the federal government have required periodic statutory changes.

> Congress' historic attention to the protection of the Senate's confirmation prerogative accords with the Supreme Court's view of the high importance the appointments process has in our constitutional scheme of balanced, separated powers. The [Supreme] Court has made it clear that "the principle of separation of powers is embedded in the Appointments Clause."[26]

This section 1.3 discusses the historical interbranch conflicts over the statutes at issue in this dispute. Historically, the Department of Justice ("DOJ") has been the context of most Senate-Executive conflict under the Appointments Clause.

---

[24] 28 U.S.C. § 541(a).

[25] Everett Fox, *Give Us a King*, xvii (Schocken 1999).

[26] Morton Rosenberg, Congressional Research Service Report for Congress, The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative 2 (1998) ("Rosenberg") at 5.

### 1.3.1   Early Statutory Implementation of the Excepting Clause in the Vacancies Act[27]

"Since President Washington's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant PAS office without first obtaining Senate approval."[28] "The earliest statutes authorized the appointment of 'any person or persons' to fill specific vacancies in the Departments of State, Treasury, and War."[29] The Vacancies Act framework was the first statutory attempt to effectuate the Excepting Clause balance of separation of powers. The Excepting Clause was designed to prevent "one branch's aggrandizing its power at the expense of another branch"[30] while ensuring that in temporary vacancies the work of Government was not impaired.

"Notably absent from these early congressional enactments is any limitation on whom the President could authorize to perform acting duties."[31] "In 1863, Congress narrowed the President's options from 'any person,' to any department head or 'other officer' whose 'appointment is vested in the President.'"[32]

Though Congress initially allowed acting officers to serve until a successor was appointed, it later strengthened the Senate's advice and consent powers and narrowed service authorized under the Excepting Clause.[33] "Congress at first allowed acting officers to serve until

---

[27] This section draws from *Garcia*, 2025 WL 2784640, *9–11, and *Giraud*, 795 F. Supp. 3d at 574-575.

[28] *SW Gen.*, 580 U.S. at 294.

[29] *Id.*

[30] *Freytag*, 501 U.S. at 878, 882.

[31] *Guedes v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 356 F. Supp. 3d 109, 148 (D.D.C. 2019).

[32] *Id.* (citing Act of Feb. 20, 1863, ch. 45, § 1, 12 Stat. at 656, 656).

[33] *Freytag*, 501 U.S. at 878, 882 (internal citation omitted).

the permanent officeholder could resume his duties or a successor was appointed, . . . but soon imposed a six month limit on acting service . . . ."[34]

In further refinement, "Congress passed the Vacancies Act in 1868. The Act expanded the number of covered agencies and positions and imposed new constraints on how the Executive could fill PAS vacancies."[35] Recognizing that a presidential interim appointment can take time, Congress provided that the first assistant to a PAS office would automatically perform the duties of the department head in the event of a vacancy.[36] "But like its predecessors, the Vacancies Act still authorized the President to choose someone other than the first assistant if [the President] wished, specifically, any department head or other Senate-confirmed officer."[37] "[T]he Vacancies Act generally authorized only ten days of acting service. That narrow window of acting service was later lengthened to 30 days."[38]

### 1.3.2    Congress Responds to DOJ Repudiation of Vacancies Act – 1973 - 1989

In 1973, after the death of FBI Director J. Edgar Hoover, the DOJ took the position that Congress intended that vacancies in the DOJ were governed by 28 U.S.C. §§ 508-510 rather than by the Vacancy Act.[39] Section 508 authorizes the Deputy Attorney General (or Associate Attorney General or others) to effectively fill in when the office of Attorney General is vacant. Section 509 vests the Attorney General with all the powers of almost all officers and agencies of

---

[34] *SW Gen.*, 580 U.S. at 294 (citing Act of Feb. 13, 1795, § 21, 1 Stat. at 415).

[35] *Garcia*, 2025 WL 2784640, *9–11.

[36] *Guedes*, 356 F. Supp. 3d at 149 (citing Act of July 23, 1868, § 1, 15 Stat. at 168).

[37] *Id.* (citing § 3, 15 Stat. at 168).

[38] *SW Gen.*, 580 U.S. at 294 (citing 15 Stat. 168, Act of Feb. 6, 1891, § 113, 26 Stat. 733); s*ee also Guedes*, 356 F. Supp. 3d at 149. The thirty-day period was enacted in 1891. Rosenberg at 2.

[39] "Validity of Designation of Bill Lann Lee as Acting Assistant Attorney General for Civil Rights" (CRS General Distribution Memorandum, January 14, 1998) (Vacancies Act Memo), *reprinted in* Hearing, "Oversight of the Implementation of the Vacancies Act," before the Senate Committee on Governmental Affairs, 105th Cong., 2d Sess. 62-115, at p. 89 (1998) (Vacancies Act Hearing).

the DOJ while Section 510 authorizes the Attorney General to delegate all functions to any other officer, employee, or agency.[40]

The Comptroller General, who leads the Government Accountability Office ("GAO"), a nonpartisan legislative branch agency, believed the DOJ argument to be without substance. But other executive branch agencies adopted the DOJ rationales, based on their own enabling legislation.[41] Also in 1973, four senators obtained a trial court order removing the Director of the Office of Economic Opportunity who had been appointed by the President without Senate confirmation.[42] These tensions were not promptly resolved.

A decade later in 1988, "[t]wo significant amendments were made to the [Vacancy] Act."[43]

> First, the Act was amended to cover all executive departments and agencies, thereby overruling a 1973 court ruling limiting its coverage to executive and military departments. Second, Section 3348 was rewritten to allow 120 days, rather than 30 days, for a temporary designee to fill a vacancy. The new provision was designed to give the President more time to find a nominee and at the same time emphasize the centrality and importance of the Senate's confirmation prerogative.[44]

But in 1989, the DOJ issued an opinion showing that it still "adhere[d] to its position that certain provisions in agency enabling statutes may trump the Vacancies Act."[45]

---

[40] More background on §§ 509 and 510 is given in section 1.3.3 of this Memorandum Decision and Order.

[41] Rosenberg at 2.

[42] *Williams v. Phillips*, 360 F. Supp. 1363 (D.D.C. 1973). The D.C. Circuit denied the Director's motion for stay, finding little likelihood of appellate success. *Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973).

[43] Rosenberg at 3.

[44] *Id.*

[45] *Id.*

### 1.3.3    The 1998 Federal Vacancies Reform Act Responds to Executive Branch Evasion of the Vacancies Act[46]

As noted above,[47] the DOJ had maintained that its enabling and delegation statutes superseded the Vacancies Act.[48] Based on that view, the DOJ had filled PAS offices with acting officers "for years without the submission to the Senate of a nominee,"[49] "sometimes in obvious contravention of the Senate's wishes."[50] A "growing number of federal departments and agencies" also joined the DOJ in claiming exemption from the Vacancies Act.[51] This trend threatened to render the Vacancies Act ineffectual, "thwarting the constitutional mandate that persons serving in advice and consent positions do so through the Senate's approval of such service."[52]

"By 1998, approximately 20 percent of PAS offices in Executive agencies were occupied by 'temporary designees,'" most of whom were serving beyond the time limits imposed by Congress.[53]

> These acting officers filled high-level positions, sometimes in obvious contravention of the Senate's wishes. One, for instance, was brought in from outside Government to serve as Acting Assistant Attorney General for the Civil

---

[46] The first paragraph of this section is reproduced nearly verbatim from *Ramirez*, 2025 WL 3019248, *9–10. The remainder of this section is drawn principally from *Garcia*, 2025 WL 2784640, *9–11, which relies on historical sources cited in case law. *See, e.g.*, *SW Gen.*, 580 U.S. at 295 (citing Rosenberg), 325 (Sotomayor, J., dissenting) (citing S. Rep. No. 105-250 (1998)); *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016) (citing S. Rep. No. 105-250); *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 70 (D.C. Cir. 2015) (citing Rosenberg, S. Rep. No. 105-250); *Giraud*, 795 F. Supp. 3d at 589, n. 178-179 (citing S. Rep. No. 105-250).

[47] *See* Section 1.3.2, *supra*.

[48] S. Rep. No. 105-250, at 3–4; Vacancies Act Memo at 17.

[49] S. Rep. No. 105-250, at 5.

[50] *SW Gen.*, 580 U.S. at 295.

[51] S. Rep. No. 105-250, at 3.

[52] *Id.* at 3–4.

[53] *S.W. Gen.*, 580 U.S. at 295 (citing Rosenberg at 1).

Rights Division of the Justice Department, immediately after the Senate refused to confirm him for that very office.[54]

Congress responded by "replac[ing] the Vacancies Act with the [Federal Vacancies Reform Act ("FVRA")]."[55] On March 18, 1998, the Senate Governmental Affairs Committee held an oversight hearing on the failure of executive agencies to adhere to the directives of the Vacancies Act."[56] Then, "several remedial bills were . . . introduced" including two in the Senate and one in the House.[57] Senate Governmental Affairs Committee Chairman Fred Thompson later "introduced his own legislative proposal . . . S. 2176, the Federal Vacancies Reform Act of 1998."[58]

When the first version of the FVRA was introduced[59] it was framed as a reclamation of Congress's Appointments Clause power. "This legislation is needed to preserve one of the Senate's most important powers: the duty to advise and consent on presidential nominees."[60] "If the Constitution's separation of powers is to be maintained, . . . legislation to address the deficiencies in the operation of the current Vacancies Act is necessary. . . . [T]he Senate's confirmation power is being undermined as never before."[61]

The Senate bill failed to survive a cloture vote. "[A] period of intense negotiations between the Senate sponsors and Administration officials followed and an agreement on a

---

[54] *Id.*

[55] *Id.*

[56] Rosenberg at 6 (referring to Vacancies Act Hearing).

[57] *Id.*

[58] *Id.* at 7. (This legislation "also addressed Vacancies Act issues raised in *Doolin Security Savings Bank, F.S.B. v. Office of Thrift Supervision*, 139 F. 3d 203 (D.C. Cir. 1998), motion for recall of mandate denied, [156 F.3d 190] (D.C. Cir. []1998).").

[59] *See* 144 CONG. REC. S6413–14 (daily ed. June 16, 1998) (statement of Sen. Thompson).

[60] *See id.* at S6413.

[61] S. Rep. No. 105-250, at 5.

compromise measure was reached and included in the FY 1999 Omnibus Consolidated and Emergency Supplemental Appropriations Act."[62]

The Senate version included § 3345(a)(1), which provided for the automatic assumption of the vacant PAS office's duties by the first assistant.[63] It also included what is now subsection (a)(2), allowing "the President (and only the President)" to fill the vacancy temporarily with a confirmed PAS officer.[64] Subsection (a)(3), which allows the President to appoint a senior official in the agency, was added during the negotiations that led to the FVRA's enactment.[65] But it had been recommended in the Senate Report.[66]

The intent and structure of the Senate bill was adopted in the final legislation: automatic elevation of the first assistant when the vacancy arose; presidential power to make alternative appointments under carefully limited criteria for the appointees; and a new statute providing that the FVRA was the exclusive means for filling vacancies in PAS offices unless another statute specifically provided otherwise.[67] The exclusivity provision was intended to counter the DOJ's argument that 28 U.S.C. §§ 508-510 authorized the Attorney General to fill vacancies in the DOJ without regard to the Vacancies Act.

### Background on 28 U.S.C. §§ 509 and 510

Title 28, Sections 509 and 510 were enacted as part of the statutes establishing the DOJ in 1870. The Judiciary Act of 1789 did not give the Attorney General any "supervisory authority

---

[62] Rosenberg at 9.

[63] S. Rep. No. 105-250, at 19.

[64] *Id.*

[65] *See* Rosenberg at 8.

[66] *See* S. Rep. No. 105-250, at 31 (suggesting "a third category of individuals to temporarily fill positions, such as a qualified individuals who have worked within the agency in which the vacancy occurs for a minimum number of days and who are of a minimum grade level").

[67] *See id.* at 11-12.

over the district attorneys (today known as United States Attorneys) established in each judicial

district"[68] or of the attorneys each executive department had to employ because the "the Attorney

General was unable to assist [the executive departments] in taking care of their legal

work . . . ."[69]

> The singular purpose of the 1870 legislation was to bring order out of the chaos
> which fragmentation and dispersal of legal authority throughout the federal
> government over time had engendered. . . . At the time of the passage of the 1870
> legislation the Attorney General had no effective control over the activities of
> district attorneys, private counsel engaged to perform litigation on behalf of the
> government, or the actions of legal counsel established by law in other
> departments. By 1870 the Act, Congress brought all these disparate and dispersed
> elements of the federal legal establishment within the new Department of Justice
> and under the control and supervision of the Attorney General.[70]

In direct response to the DOJ's position,[71] the new FVRA obliterated the delegation

argument with a specific statute:

> Any statutory provision providing general authority to the head of an Executive
> agency (including the Executive Office of the President, and other than the
> Government Accountability Office) to delegate duties statutorily vested in that
> agency head to, or to reassign duties among, officers or employees of such
> Executive agency, is not a statutory provision [which is concurrently effective
> with the FVRA for filling vacancies].[72]

As Rosenberg's CRS November 1998 report states:

> Section 3347(b) expressly negates the DOJ position that the statutory vesting of
> general agency authority in the head of any agency and allowing the agency head
> to delegate or reassign those vested duties and responsibilities to other agency
> officers or employees thereby provides an alternative to the Act's otherwise
> exclusive means of temporarily filling vacant positions.[73]

---

[68] Vacancies Act Memo at 9.

[69] *Id.* at 10.

[70] *Id.* at 9.

[71] Rosenberg at 2-5.

[72] 5 U.S.C. § 3347(b).

[73] Rosenberg at 9.

### 1.3.4    2006 and 2007 Amendments of 28 U.S.C. § 546[74]

The FVRA is not the only field of congressional and executive conflict on executive power to fill vacant United States Attorney positions. The history of Section 546 of Title 28 is another example of congressional and executive push and pull.

The modern text of 28 U.S.C. § 546 was enacted in a 1986 amendment making "minor or technical amendments to provisions enacted by the Comprehensive Crime Control Act of 1984."[75] The statute allowed the Attorney General to appoint an interim United States Attorney if the office was vacant, but limited the term to 120 days. At the end of 120 days, the district court could appoint an interim United States Attorney, without a term limit.

Twenty years later Congress significantly revised § 546 in the USA PATRIOT Improvement and Reauthorization Act of 2005.[76] "The 2006 revision entirely removed the 120-day limit" on the term of service of an appointee of the Attorney General and took out the district court's authority to thereafter appoint a United States Attorney. The statute simply provided that "[a] person appointed as United States attorney under this section may serve until the qualification of a United States Attorney for such district appointed by the President under section 541 of this title."[77] About a year later, Congress reverted to the pre-PATRIOT Act language by restoring the 120-day limit and the right of the district court to thereafter appoint.[78] The House Report on the draft 2007 bill identified as a primary concern "[b]ypassing the Requirement of Senatorial Advice and Consent," which included "several instances where the

---

[74] This section is taken nearly verbatim from *Giraud*, 795 F. Supp. 3d at 581.

[75] Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 69, 100 Stat. 3592, 3616-17 (1986).

[76] USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, Title V, § 502, 120 Stat. 192, 246 (2006).

[77] *Id.*

[78] Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007).

Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals. For example, one individual received a total of four successive interim appointments."[79]

### 1.3.5   Current Tensions Relating to the FVRA

The issues regarding the FVRA are not settled. Academics and advocacy groups regard FRVA reform as a priority.[80] Senate Bill 2838, introduced in the Senate September 17, 2025, proposes substantial amendments to the FVRA, including amendments to provisions argued in this dispute.[81]

### 1.3.6   Summary of Congressional and Executive Balancing

"There is a long history of interbranch conflict"[82] over the authority to appoint a United States Attorney. "[T]he Executive has repeatedly taken an expansive view of Congressional cessions of power, and Congress has consistently acted to refute these 'threat[s] to the Senate's advice and consent power.'"[83] This case must determine the current balance of executive and congressional power in appointing a United States Attorney. This balance is found in the plain text of statutes Congress has enacted to effectuate the Appointments Clause and its Excepting Clause. But the last word of Congress has surely not yet been spoken.

---

[79] H.R. Rep. No. 110-58 at 6 (2007).

[80] Faith Williams, *Fact Sheet: Amend the Federal Vacancies Reform Act*, Project on Government Oversight, October 24, 2024; Courtney Bublé, *Democrats Try Again to Reform the Vacancies Act*, Government Executive, July 5, 2023; Thomas A. Berry, *Closing the Vacancies Act's Biggest Loophole*, CATO Briefing Paper, January 25, 2022; *Federal Vacancies Reform Act,* Protect Democracy, November 21, 2021; Courtney Bublé, *Are Reforms to the Federal Vacancies Reform Act Still Needed Under President Biden*, Government Executive April 23, 2021; Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613 (2020); Joseph L. Stayne, *Vacant Reform: Why the Federal Vacancies Reform Act of 1998 is Unconstitutional,* 50 Duke Law Journal 1511-1539 (2001).

[81] S. 2838, 119th Cong. § 2502, text available at https://www.congress.gov/bill/119th-congress/senate-bill/2838.

[82] *Giraud*, No. 795 F. Supp. 3d at 575 (internal quotations omitted).

[83] *SW Gen.*, 580 U.S. at 294-959, quoted in *Garcia*, 2025 WL 2784640, *9.

## 2  RELEVANT FACTS

The following is a timeline of facts relevant to Defendants' Motions:

| | |
|---|---|
| Nov. 2018 | Ryan Ellison begins working as an Assistant United States Attorney ("AUSA") for the District of New Mexico.[84] |
| May 17, 2022 | Alexander M.M. Uballez, who had been nominated by President Joseph Biden, is confirmed by the Senate as the United States Attorney for the District of New Mexico.[85] |
| Feb. 17, 2025 | Mr. Uballez resigns as United States Attorney for the District of New Mexico, at the direction of President Donald J. Trump (28 days after President Trump's inauguration).[86] |
| | Upon Mr. Uballez's resignation, Holland S. Kastrin, the then First Assistant United States Attorney ("FAUSA") for the District of New Mexico, begins serving as Acting United States Attorney for the District of New Mexico under 5 U.S.C. § 3345(a)(1).[87] |
| Apr. 17, 2025 | Ryan Ellison becomes interim United States Attorney for the District of New Mexico by designation and appointment from Attorney General Pamela Bondi under 28 U.S.C. § 546(a).[88] Mr. Ellison's term is limited to 120 days by 28 U.S.C. § 546(c)(2). Measured from April 17, 2025, Mr. Ellison's term would expire on August 15, 2025. |
| Apr. 19, 2025 | Kimberly Brawley is designated as the FAUSA for the District of New Mexico.[89] |
| Aug. 8, 2025 | Seven days before Mr. Ellison's 120-day term as interim United States Attorney would expire, by letter to Mr. Ellison, the District Judges for the District of New Mexico write regarding their "decision on whether to proceed under 28 U.S.C. § 546(d), following the expiration of [Mr. Ellison's] term as [i]nterim United States Attorney for the District of New Mexico under 28 U.S.C. § 546(c)(2)." The letter states: "After careful consideration and by general agreement the District Judges decline to exercise this Court's authority under § 546(d) [to appoint a United States Attorney], at this time."[90] |

---

[84] Responses at 2-3.

[85] *Id*. at 2; Motions at 2.

[86] Motions at 2; Responses at 2. Defendants Ramirez-Martinez and Brady were indicted on October 25, 2022, and August 13, 2024, respectively, during Mr. Uballez's tenure as United States Attorney. *See* n.1, *supra* (Ramirez-Martinez Indictment, Brady Indictment). Their Indictments were signed by an Assistant United States Attorney ("AUSA"), but not by Mr. Ellison. *Id*.

[87] Motions at 2; Responses at 2.

[88] Order, Attorney General Pamela Bondi, Apr. 17, 2025, Exhibit 1 to Responses, ECF no. 35-1 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Oct. 14, 2025.

[89] Notification of Personnel Action, Exhibit 4 to Responses at 1, ECF no. 35-4 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Sept. 17, 2025.

[90] Letter from District Judges, Aug. 8, 2025, Exhibit 3 to Motions at 32.

| Aug. 11, 2025 | Four days before Mr. Ellison's 120-day term as interim United States Attorney would expire, a personnel action lowered Ms. Brawley's position from FAUSA to AUSA, effective August 13, 2025.[91] |
|---|---|
| Aug. 12, 2025 | Three days before Mr. Ellison's 120-day terms as interim United States Attorney would expire, a personnel action changed Ms. Brawley's position from AUSA to Deputy United States Attorney, effective August 13, 2025.[92] |
| Aug. 13, 2025 | Two days before his 120-day term as interim United States Attorney would expire, by letter addressed to Attorney General Bondi, Mr. Ellison writes: "I hereby resign my position as interim United States Attorney for the District of New Mexico effective at 5:00 pm today, August 13, 2025." The letter then states: "I look forward to continuing to lead the United States Attorney's Office for the District of New Mexico."[93] |
| | At the time of Mr. Ellison's resignation as interim United States Attorney, no individual held the position of FAUSA for the District of New Mexico.[94] |
| Aug. 14, 2025 | The day before Mr. Ellison's 120-day term as interim United States Attorney would expire, Attorney General Bondi issues an order[95] that purports to do two things:<br><br>1. designates Mr. Ellison, "[b]y virtue of the authority vested in the Attorney General by law, including 28 U.S.C. § 509 and 510," as the FAUSA for the District of New Mexico "effective upon his resignation as United States Attorney for the District of New Mexico and when he returns to paid status as an Assistant United States Attorney;" and<br><br>2. orders that "[a]s First Assistant United States Attorney, Mr. Ellison will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d." |
| Aug. 15, 2025 | Mr. Ellison's 120-day term as interim United States Attorney under 28 U.S.C. § 546(a) would have expired.[96] |

---

[91] Notification of Personnel Action, Exhibit 4 to Responses at 1.

[92] *Id.* at 2.

[93] Letter from Ryan Ellison, Aug. 13, 2025, Exhibit 2 to Responses, ECF no. 35-2 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Oct. 14, 2025.

[94] *Id.*; Notification of Personnel Action, Exhibit 4 to Responses at 1.

[95] Order, Attorney General Pamela Bondi, Designation of Ryan Ellison as First Assistant United States Attorney for the District of New Mexico, Aug. 14, 2025, Exhibit 3 to Responses, ECF no. 26-3 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Oct. 14, 2025.

[96] Motions at 1; Responses at 2. The Indictments and charges of all Defendants, other than Defendants Ramirez-Martinez and Brady, were filed after Mr. Ellison's 120-day term as interim United States Attorney would have expired. *See* n.1, *supra*. Each Indictment and the SEALED Information was signed by an AUSA, and not Mr. Ellison. *Id.* A Certification under the Federal Juvenile Delinquency Act regarding Defendant SEALED was signed by Mr. Ellison as "Acting United States Attorney for the District of New Mexico, after investigation of the matters described herein, and with the delegation of the Attorney General of the United States and pursuant to 18 U.S.C. § 5032." Certification, ECF no. 7 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Sept. 23, 2025. However, a subsequent Certification under the Federal Juvenile Delinquency Act regarding Defendant

| Sept. 15, 2025 | Marks 210 days after the vacancy created by Mr. Uballez's February 17, 2025, resignation as United States Attorney for the District of New Mexico.[97] This would have been the term limitation under 5 U.S.C. § 3346(a)(1) for an acting officer under 5 U.S.C. § 3345(a)(1) had Mr. Uballez's resignation not been within 60 days after President Trump's inauguration. |
| --- | --- |
| Dec. 4, 2025 | Attorney General Bondi issues an order that confirms the August 14, 2025, order and "delegate[s] to [Mr. Ellison] all the delegable, nonexclusive functions of the United States Attorney for the District of New Mexico while the position of United States Attorney remains vacant."[98] |
| Dec. 14, 2025 | Marks 300 days after the vacancy created by Mr. Uballez's February 17, 2025, resignation as United States Attorney for the District of New Mexico.[99] This would have been the term limitation under 5 U.S.C. § 3346(a)(1) and § 3349a(b) for Ms. Kastrin's term as Acting United States Attorney for the District of New Mexico under 5 U.S.C. § 3345(a)(1) had Mr. Ellison not been appointed as interim United States Attorney under § 546(a). |

## 3    DISCUSSION

### 3.1    Relief Sought by Defendants

Defendants argue that because Ryan Ellison was appointed as interim United States Attorney for the District of New Mexico under 28 U.S.C. § 546, his lawful term could not exceed the 120-day limit of § 546(c)(2).[100] This is because Congress created a statutory scheme for temporary service of federal offices, like United States Attorney, which permits use of various avenues to temporarily fill PAS office vacancies, but does not permit use of those

---

SEALED was signed by Hope S. Olds as "Acting Deputy Assistant Attorney General of the Criminal Division of the U.S. Department of Justice, after investigation of the matters described herein, and with the delegation of the Attorney General of the United States and pursuant to 18 U.S.C. § 5032." Certification, ECF no. 48 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Oct. 24, 2025. Defendant SEALED concedes that the Certification signed by Ms. Olds satisfies the juvenile certification requirements of § 5032. Reply in Support of Supplemental Memorandum, ECF no. 55 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Nov. 5, 2025.

[97] Motions at 2; Responses at 2.

[98] Order, Attorney General Pamela Bondi, Authorizing Ryan Ellison to Perform the Functions of the United States Attorney for the District of New Mexico, Dec. 4, 2025, Exhibit 3 to Responses, ECF no. 54-1 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Dec. 5, 2025.

[99] Motions at 2; Responses at 2.

[100] Motions at 1, 11-18.

statutes to extend that temporary service indefinitely.[101] Defendants argue the administration

attempted to improperly circumvent Congress's time limitation for temporary service through

Mr. Ellison's resignation as interim United States Attorney, and his subsequent appointment as

FAUSA and the Attorney General's delegation of duties.[102]

Defendants argue that Mr. Ellison's resignation did not create a vacancy that triggers the

FVRA's provision for the FAUSA to automatically become Acting United States Attorney.[103]

This is because the FVRA makes clear that only a PAS officer's death, resignation, or inability to

perform functions and duties creates a triggering vacancy.[104] Mr. Ellison was not FAUSA at the

time of a PAS officer's triggering vacancy, and could not become Acting United States Attorney

under the FVRA.[105] Instead, Defendants argue, because the administration chose to appoint him

as interim United States Attorney under § 546, Mr. Ellison is barred from any acting service

under the FVRA by the 120-day limit of § 546(c)(2).[106] And the Attorney General's delegation

of the United States Attorney's duties to Mr. Ellison is precluded by the FVRA.[107] Defendants

also argue that regardless of whether Mr. Ellison is statutorily authorized to act as the United

States Attorney, his continued service violates the Appointments Clause.[108]

Defendants seek to void the actions of the USAO that occurred after Mr. Ellison's August

13, 2025, resignation as interim United States Attorney, including decisions to file and continue

---

[101] *Id.*

[102] *Id.* at 15-18.

[103] *Id.* at 9-11.

[104] *Id.*

[105] *Id.* at 6-11.

[106] *Id.* at 11-18.

[107] Reply in Support of Motion to Dismiss Indictment and Disqualify United States Attorney ("Replies") at 9-10, ECF no. 41 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Oct. 24, 2025.

[108] Motions at 19-22.

to pursue charges against them.[109] And Defendants seek to disqualify Mr. Ellison, and any attorneys acting under his direction, from any role in supervising and participating in their cases.[110]

As will be discussed,[111] Defendants are correct that Mr. Ellison is not validly acting as United States Attorney for the District of New Mexico under the FVRA, or through delegation of duties and functions by the Attorney General. Therefore, Mr. Ellison cannot validly claim, as he has, that he is the Acting United States Attorney for the District of New Mexico. However, Mr. Ellison was validly appointed as FAUSA for the District of New Mexico by the Attorney General and may continue to act in that role, including as a supervisor of attorneys within the USAO.[112] Defendants fail to establish a legal basis to have their indictments and criminal charges dismissed, or to have Mr. Ellison or any other attorney within the USAO disqualified from their criminal cases.[113]

### 3.2    The Effect of the Statutes on Events in Timeline

#### 3.2.1    Alexander Uballez was Appointed and Resigned under 28 U.S.C. § 541

On May 17, 2022, Alexander M.M. Uballez, who had been nominated by President Joseph Biden, was confirmed by the Senate as the United States Attorney for the District of New Mexico.[114] The combination of action by the President and Senate was required under 28 U.S.C. § 541(a) to fill the PAS office of United States Attorney.[115] And under § 541(c), President

---

[109] *Id*. at 2, 22-26.

[110] *Id*.

[111] *See* Sections 3.2.4 and 3.2.5, *infra*.

[112] *See* Section 3.2.6, *infra*.

[113] *See* Section 3.3, *infra.*

[114] Motions at 2; Responses at 2.

[115] 28 U.S.C. § 541(a).

Trump was entitled to ask for Mr. Uballez's resignation,[116] which was given on February 17, 2025.[117]

Mr. Uballez was the latest PAS United States Attorney for the District of New Mexico. And his resignation created the vacancy of a PAS office that may only be filled through presidential appointment and senate confirmation under § 541(a). However, since the vacancy's creation, President Trump has not formally selected any individual to undergo the process and procedure of becoming a PAS United States Attorney for the District of New Mexico. The PAS office has thus remained vacant since Mr. Uballez's resignation with "the functions and duties" of the office being performed temporarily by an Acting United States Attorney under the FVRA,[118] and later under by an interim United States Attorney appointed under 28 U.S.C. § 546(a).

### 3.2.2    On February 17, 2025, Holland Kastrin Became Acting United States Attorney Under 5 U.S.C. § 3345(a)(1)

The vacancy caused by Mr. Uballez's resignation triggered the FVRA's automatic provision for the first assistant to the PAS office to "perform the functions and duties of the office temporarily in an acting capacity . . . ."[119] At the time of Mr. Uballez's resignation, Holland Kastrin was the FAUSA for the District of New Mexico.[120] Therefore, by the FVRA's automatic provision,[121] Ms. Kastrin became the Acting United States Attorney for the District of New Mexico on February 17, 2025.[122]

---

[116] *Id*. § 541(c).

[117] Motions at 2, Responses at 2.

[118] 5 U.S.C. § 3345(a).

[119] *Id*. § 3345(a)(1).

[120] Motions at 2; Responses at 2.

[121] 5 U.S.C. § 3345(a)(1).

[122] Motions at 2; Responses at 2.

The FVRA's automatic provision is set forth in 5 U.S.C. § 3345(a)(1), which provides:

> If an officer of an Executive agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office . . . the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346[.][123]

This automatic transition for the highest-ranking career employee of the PAS office—the FAUSA—to temporarily perform the functions and duties of the office's lead role—as Acting United States Attorney—is plainly intended by the statutory language.[124] It is also supported by the legislative history (to the extent legislative history is useful to an unambiguous statute):

> When a vacancy arises, the bill provides *an exclusive set of procedures that may be followed. If the vacant officer has a first assistant, the first assistant performs the functions and duties of the office temporarily in an acting capacity, subject to the time limitations of section 3346.* . . . The Vacancies Act provides for the *automatic performance* of the functions and duties of the vacant office by the first assistant because such person is often a career official with knowledge of the office or a Senate-confirmed individual[.][125]

"This explanation confirms not only that the § 3345 procedures were intended to be exclusive and that the existing first assistant was to become the acting official, but why – because the first assistant would have knowledge of the agency's functioning."[126] "[T]he routine functions of the office should be allowed to continue for a limited period of time *by that one person.*"[127] "The Senate Report further confirms the mandatory and automatic nature of subsection (a)(1), saying that 'if a first assistant exists, the President need not take any action for an acting official to

---

[123] 5 U.S.C. § 3345(a)(1).

[124] *Id.*

[125] S. Rep. No. 105-250, at 12 (emphasis added).

[126] *Garcia*, 2025 WL 2784640, *10.

[127] S. Rep. No. 105-250, at 12 (emphasis added).

serve.'"[128] If "there is no first assistant, no one is permitted by law to become an acting officer" until the President names a qualified individual under subsection (a)(2) or (a)(3).[129] "But if the President does decide to make the appointment, the FVRA grants only 'limited flexibility' as seen in the criteria of subsections (a)(2) and (a)(3).[130]

The FVRA limits the term of an Acting United States Attorney under § 3345 to "210 days beginning on the date the vacancy occurs."[131] But when a vacancy occurs within 60 days of a transitional President's inauguration, the FVRA extends the beginning date of the 210-day term to the later of 90 days after the transitional inauguration day, or 90 after the vacancy occurs.[132] The effect of the limitation provisions on the facts here is that the term for any Acting United States Attorney under § 3345(a) arising from the vacancy created by Mr. Uballez's resignation could not exceed December 14, 2025. This is because the vacancy created by Mr. Uballez's resignation occurred only 28 days after President Trump's inauguration,[133] thus extending the beginning date of the 210-day term to 90 days after Mr. Uballez's resignation.[134] And 300 days after Mr. Uballez's February 17, 2025, resignation was December 14, 2025.

Sections 3345(a)(2) and (3) create avenues within the FVRA for the President to direct an individual other than the first assistant to temporarily perform the functions and duties of a vacant PAS office in an acting capacity.[135] The discretion conferred by these subsections is

---

[128] *Garcia*, 2025 WL 2784640, *10 (quoting S. Rep. No. 105-250, at 12).

[129] S. Rep. No. 105-250, at 13.

[130] *Garcia*, 2025 WL 2784640, *10 (quoting S. Rep. No. 105-250, at 13).

[131] 5 U.S.C. § 3346(a)(1).

[132] 5 U.S.C. § 3349a(b).

[133] Motions at 2; Responses at 2.

[134] 5 U.S.C. § 3349a(b).

[135] 5 U.S.C. § 3345(a)(2), (3).

exclusive to the President.[136] But appointees are subject to the same time limitations as the FVRA's automatic provision.[137] These avenues could have been taken to replace Ms. Kastrin as Acting United States Attorney. But they were not taken, and are now precluded following December 14, 2025, by the FVRA's term limitation provisions.

The relevant facts establish that the only valid use of the FVRA for the vacancy created by Mr. Uballez's resignation was the elevation of Ms. Kastrin from FAUSA to Acting United States Attorney through the automatic application of § 3345(a)(1). Ms. Kastrin could have served a term as Acting United States Attorney until December 14, 2025.[138] However, her term was cut short by the administration when it elected to appoint Ryan Ellison as interim United States Attorney under 28 U.S.C. § 546(a).

### 3.2.3    Mr. Ellison Was Validly Appointed Interim United States Attorney under 28 U.S.C. § 546(a) on April 17, 2025

By its plain language the FVRA is the exclusive method to temporarily fill a PAS office vacancy, unless another statute expressly provides otherwise or the President makes a recess appointment:

> Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any [PAS] office of an Executive agency . . . unless--
>
> (1) a statutory provision expressly--
>
> (A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
>
> (B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or

---

[136] *Id.*

[137] *Id.* § 3346.

[138] *Id.*; Motions at 2; Response at 2.

> (2) the President makes an appointment to fill a vacancy in such office during the recess of the Senate pursuant to clause 3 of section 2 of article II of the United States Constitution.[139]

For United States Attorneys, Congress has expressly authorized a temporary filling of the PAS office outside the FVRA through 28 U.S.C. § 546. Therefore, an administration "is permitted to elect between these two statutory alternatives"[140]—the FVRA and § 546—to temporarily fill a PAS United States Attorney vacancy.

Under § 546(a), "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant."[141] The term of a § 546(a) appointment is limited to the earlier of "the qualification of a [PAS] United States attorney for such district" or "the expiration of 120 days after appointment by the Attorney General . . . ."[142] An individual appointed by the Attorney General under § 546(a) is colloquially referred to as an interim United States Attorney.

After Ms. Kastrin automatically became the Acting United States Attorney under § 3345(a)(1), the administration elected to proceed under the alternate pathway created by § 546 to temporarily fill the PAS office vacancy created by Mr. Uballez's resignation. By order, dated April 17, 1015, Attorney General Bondi designated and appointed Ryan Ellison as interim United States Attorney for the District of New Mexico under § 546(a).[143] This appointment was a valid exercise of Attorney General Bondi's authority under § 546(a), and did not run afoul of

---

[139] 5 U.S.C. § 3347(a).

[140] *Hooks*, 816 F.3d at 556.

[141] 28 U.S.C. § 546(a).

[142] *Id*. § 546(c).

[143] Order, Attorney General Pamela Bondi, Apr. 17, 2025.

the FVRA's exclusivity provision. This appointment displaced Ms. Kastrin as Acting United States Attorney.

Therefore, Mr. Ellison validly became interim United States Attorney for the District of New Mexico on April 17, 2026. His term could not exceed August 15, 2025, under § 546(c)'s 120-day term limit. But his term could have been further limited through qualification of a PAS United States Attorney under § 541, or designation of an Acting United States Attorney by the President under the FVRA.[144] None of these statutorily contemplated eventualities occurred.

Instead, in an apparent attempt to contravene the clear and plain limitations Congress implemented for the temporary filling a vacant PAS United States Attorney office, the administration took steps it believed would extend the term for which Mr. Ellison could fill the vacancy created by Mr. Uballez's resignation. As discussed above,[145] the tension between the Executive and Congress regarding PAS vacancies is not unique to this administration. And as discussed below,[146] the steps taken by the administration here did not validly extend Mr. Ellison's term.

### 3.2.4   The August 14, 2025 Order Does Not Empower Mr. Ellison as Acting United States Attorney

On August 13, 2025, two days before his 120-day term as interim United States Attorney would expire, Mr. Ellison resigned from his position.[147] His resignation letter nevertheless states: "I look forward to continuing to lead the United States Attorney's Office for the District of New Mexico."[148] This statement is perplexing considering that at the time of his resignation, Mr.

---

[144] 5 U.S.C. § 3345(a)(2), (3).

[145] *See* Section 1.3, *supra.*

[146] *See* Sections 3.2.4 and 3.2.5, *infra.*

[147] Letter from Ryan Ellison, Aug. 13, 2025.

[148] *Id.*

Ellison did not hold any other supervisory role in the USAO, nor had President Trump submitted his name for qualification of the PAS office or designated him for an acting capacity under §§ 3345(a)(2) or (3). And at the time of Mr. Ellison's resignation, no individual held the position of FAUSA for the District of New Mexico,[149]

However, the day following Mr. Ellison's resignation, August 14, 2025, Attorney General Bondi issued an order which sheds light on the statement made in Mr. Ellison's resignation letter. The August 14, 2025, order purports to do two things:

> (1) it designates Mr. Ellison, "[b]y virtue of the authority vested in the Attorney General by law, including 28 U.S.C. § 509 and 510," as the FAUSA for the District of New Mexico "effective upon his resignation as United States Attorney for the District of New Mexico and when he returns to paid status as an Assistant United States Attorney;" and

> (2) it orders that "[a]s First Assistant United States Attorney, Mr. Ellison will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d."[150]

The USAO argues that Mr. Ellison's resignation triggered a PAS office vacancy under the FVRA, and that by virtue of the August 14, 2025, order and § 3345(a)(1), Mr. Ellison automatically became the Acting United States Attorney for the District of New Mexico on August 13, 2025, for a term of 210 days.[151] The USAO is wrong for several reasons.

First, neither the FVRA nor any other legal authority gives the Attorney General power to order that an FAUSA has the authority to serve as Acting United States Attorney upon a vacancy under the FVRA. The Attorney General certainly has the power to designate an individual as an

---

[149] *Id*.; Notification of Personnel Action at 1.

[150] Order, Attorney General Pamela Bondi, Designation of Ryan Ellison as First Assistant United States Attorney for the District of New Mexico, Aug. 14, 2025.

[151] Responses at 1-2, 5-10.

FAUSA.[152] But, as discussed, the FVRA's plain language provides that an FAUSA's ascension to Acting United States Attorney is automatic only upon a triggering vacancy.[153] Therefore, this portion of Attorney General Bondi's August 14, 2025, order carries no force and has no effect.

Attorney General Bondi's commentary about the effect of Mr. Ellison's designation as FAUSA is also incorrect. Mr. Ellison's resignation did not create a vacancy under the FVRA to trigger an automatic ascension of FAUSA to Acting United States Attorney under § 3345(a)(1). The statute's plain language identifies a triggering vacancy as the resignation of "*an officer* of an Executive agency . . . *whose* appointment to office is required to be made by the President, by and with the advice and consent of the Senate[.]"[154] And the ascension is of "the first assistant to the office of *such officer*."[155] The only reasonable interpretation of this plain language is that a PAS officer's resignation is needed to create a triggering vacancy. And then, only the first assistant to the office at the time of the PAS officer's resignation would automatically become the acting officer.

The USAO's alternate reading of § 3345(a)(1), requiring only the resignation of an individual temporarily filling a PAS office is not reasonable. Such a reading ignores the actual statutory text and undermines the policies behind and reasons for the FVRA's enactment. The reading is also contrary to longstanding Supreme Court precedent stating that when a "subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, [the subordinate] is not thereby transformed

---

[152] 28 C.F.R. § 0.137(b).

[153] 5 U.S.C. § 3345(a)(1).

[154] *Id*. (emphasis added).

[155] *Id*.

into the superior and permanent official."[156] And to the extent useful to an unambiguous statute, the legislative history confirms the USAO's reading of the state is incorrect.[157]

The Senate understood that the automatic designation of an acting official in § 3345(a)(1) would apply to the first assistant in place when the vacancy arose:

> An acting officer may die or resign. In that event, the first assistant, if there is one, or a new presidential designee of a Senate-confirmed officer may become the acting officer, limited in service [to a specific period of time]. *No one else may serve as acting officer. Once again, that means that if there is no first assistant, and no presidential designation, no one may serve as acting officer.*[158]

While this statement does not include the subsection (a)(3) appointment provision adopted in the final FVRA, it underscores that if there is no first assistant when the vacancy arises, and if the President does not exercise his narrowly controlled power to appoint, then "[n]o one else may serve as acting officer."[159] The Senate Report repeats this conclusion: "If there is no first assistant, no one is permitted by law to become an acting officer until the President designates a Senate-confirmed individual to be the acting officer," or, after the final amendment, designates a senior officer from the agency as allowed in subsection (a)(3).[160]

The Congressional Research Service Report for the final legislation confirms this intent. It explains that the FVRA was enacted in response to the Executive Branch's repeated disregard of previous vacancy statutes.[161] It confirms that "the President's choices of action are strictly confined" under the statute.[162] And it directly rejects the USAO's position (asserted in this case

---

[156] *United States v. Eaton*, 169 U.S. 331, 343 (1898).

[157] The following two paragraphs are taken nearly verbatim from *Garcia,* 2025 WL 2784640, *10–11.

[158] S. Rep. No. 105-250, at 14 (emphasis added).

[159] *Id*.

[160] *Id.* at 13.

[161] *See* Rosenberg at 3.

[162] *Id.* at 1.

and discussed more fully below) that vacancies could be filled through general delegation statutes: "The new Vacancies Act rejects the DOJ position on temporary appointments and makes it clear that the Act is the exclusive vehicle for temporarily filling vacant advice and consent positions unless Congress expressly provides otherwise."[163]

The centerpiece of the FVRA was an overhaul of § 3345, intended to clarify that the statute applies to "all officers of executive agencies whose appointments require Senate confirmation."[164] When a PAS officer dies, resigns, or is incapacitated, a "vacancy arises" and is filled by an acting officer subject to the FVRA's time limits.[165] When those time limits expire, "the position again becomes vacant, but there is no 'vacancy' that permits another person to serve" as an acting officer.[166] In other words, an acting officer cannot trigger § 3345 a second time and reset the clock. "Otherwise, a string of interim and acting officials could serve" in succession, rendering the time limits meaningless.[167] The indefinite string of interim and acting officials would also render meaningless § 541(a)—that United States Attorney is a PAS office that may only be filled through presidential appointment and senate confirmation.

Mr. Ellison was not a PAS officer when he resigned as interim United States Attorney. Nor is a § 546(a) interim United States Attorney a PAS office. Mr. Ellison was merely temporarily filling the PAS United States Attorney vacancy created by Mr. Uballez's resignation through appointment by the Attorney General under § 546(a). Therefore, Mr. Ellison's

---

[163] *Id.*

[164] S. Rep. No. 105-250, at 12. This paragraph is taken nearly verbatim from *Ramirez*, 2025 WL 3019248, *9–10.

[165] S. Rep. No. 105-250, at 12.

[166] *Id.* at 14.

[167] *Id.* ("[T]he Committee reaffirms that there is only one vacancy that triggers the [time limits].").

resignation as interim United States Attorney had no effect for purposes of triggering a vacancy under the FVRA.

But even if the resignation of an interim United States Attorney did create a vacancy that would trigger the FVRA's automatic provision, there was no FAUSA for the District of New Mexico at the time of Mr. Ellison's resignation.[168] It was not until a day later that Attorney General Bondi designated Mr. Ellison as FAUSA.[169] Attorney General Bondi's August 14, 2025, order purports to make the designation effective as of the date of Mr. Ellison's resignation.[170] But, as the USAO concedes,[171] no legal authority gives Attorney General Bondi the power to enter such a *nunc pro tunc* order.[172] This is not surprising, as such authority would allow the Attorney General to retroactively avoid the FVRA's limitations and timing restrictions, thereby rendering them meaningless, and would undermine the policies behind and reasons for the FVRA's enactment. Therefore, even under the USAO's incorrect reading of § 3345(a)(1), Mr. Ellison did not validly become the Acting United States Attorney for the District of New Mexico as a result of his resignation as interim United States Attorney and Attorney General Bondi's August 14, 2025, order.

---

[168] Letter from Ryan Ellison, Aug. 13, 2025; Notification of Personnel Action, Exhibit 4 to Responses at 1.

[169] Order, Attorney General Pamela Bondi, Designation of Ryan Ellison as First Assistant United States Attorney for the District of New Mexico, Aug. 14, 2025.

[170] *Id.*

[171] Supplemental Briefing by the United States at 7-8, ECF no. 54 in in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Dec. 5, 2025.

[172] *Cf. United States v. Comey*, No. 1:25-cr-00272-MSN, 2025 WL 3266932, *11 (E.D. Va. Nov. 24, 2025) (concluding that the Attorney General had no authority to "retroactively confer Special Attorney status.").

### 3.2.5   The August 14, 2025, Order Has No Effect Under 28 U.S.C. §§ 509, 510, or 515

The USAO also argues that Attorney General Bondi's August 14, 2025, order constitutes a valid delegation of the functions and duties of the United States Attorney for the District of New Mexico to Mr. Ellison.[173] This argument fails for two reasons.

First, while the August 14, 2025, order references the Attorney General's delegation authority under 28 U.S.C. §§ 509 and 510, the order contains no language identifying any functions or duties of the United States Attorney being delegated to or conferred on Mr. Ellison. Nor does the order include any language regarding a special appointment of Mr. Ellison that would authorize him to perform delegable duties of the United States Attorney. Indeed, the order's references to the delegation statutes are made only in the sentence that designates Mr. Ellison as FAUSA. And a plain reading of that sentence is that the Attorney General is using the delegation statutes as authority to designate Mr. Ellison as FAUSA. The order simply does not include the delegation of functions and duties that the USAO argues. And there is no basis to read such a delegation into the August 14, 2025, order.

The second reason the August 14, 2025, order cannot constitute a delegation of the functions and duties of the United States Attorney to Mr. Ellison is that such a delegation is expressly prohibited by the FVRA. As discussed, 5 U.S.C. § 3347(a)(1) provides that the FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any" PAS office unless "a statutory provision expressly" authorizes or designates such other means.[174] Section 3347(b) then excludes general delegation statutes, such as those referenced in the August 14, 2025, order, as providing such other means:

---

[173] Responses at 13-18.

[174] 5 U.S.C. § 3347(a).

> Any statutory provision providing general authority to the head of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such executive agency, is not a statutory provision to which subsection (a)(1) applies.[175]

The USAO's contrary reading to the statute's plain language is not new. Its arguments are consistent with DOJ positions over time. The Vacancies Act Hearing report extensively summarizes the history of the DOJ's reliance on §§ 509 and 510.[176] Previously, the DOJ position was that the Vacancy Act did not apply at all to DOJ due to the cited sections.[177] Now the DOJ claims those sections *and* the Vacancy Act are available for appointment of a temporary United States Attorney.[178] While the record shows that Congress thought it was ending this dispute in 1998, the assertion has again arisen.[179]

Nevertheless, as the Senate Committee majority explained, "[i]n recent decades, the Department of Justice has argued that its advise and consent positions are not covered by the Vacancies Act," and has instead argued that its general delegation

> authority supersedes the Vacancies Act's restrictions on temporarily filling vacant advice and consent positions, allowing for designation of acting officials for an indefinite period, even without submitting a nomination to the Senate to fill the position on a permanent basis. This interpretation of the law is wholly lacking in logic, history, or language, as evidenced by repeated opinions of the Comptroller General.[180]

---

[175] *Id*. § 3347(b).

[176] Vacancies Act Memo at 17-21.

[177] *Id.* at 17.

[178] Responses at 13-18.

[179] The following paragraph is taken nearly verbatim from *Giraud*, 795 F. Supp. 3d at 590.

[180] S. Rep. No. 105-250 at 3; *id.* at 30 (additional view) ("For too long, the Executive Branch's interpretation and implementation of [the Vacancies Act] have stripped it of its original intent and, on occasion, effectively deprived the Senate of its constitutional right to partake in the appointment of a number of Federal officers."); *id.* at 34 (minority view).

At oral argument, the USAO suggested there was strong support in the legislative history for its position that § 3347(b) was not targeting the Attorney General's ability to delegate powers to make someone equivalent to a United States Attorney. Counsel referred to the government's reply brief before the Third Circuit Court of Appeals in *United States v. Giraud*.[181] In that brief, the government admitted that the Senate Report stated "that § 3347 forecloses the argument that an agency's delegation statutes 'rather than the Vacancies Act, apply to vacancies' in the agency.[182] But the USAO argued that "the legislative history includes 'competing narratives'" relying on a statement in the report that "'[d]elegable functions of the office could still be performed by other officers or employees.'"[183] The statement in the *Giraud* reply brief is a false comparison. Of course, § 3347(b) does not operate to generally bar Attorney General delegation of duties to subordinates – but where the delegation purports to confer "authority to serve as Acting United States Attorney"[184] the delegation is barred by the statute. Nothing in the legislative history suggests that the Senate thought it was leaving the Attorney General's delegation powers in 28 U.S.C. § 510 as an exception to § 3347(b). To the contrary, that argument was a specific target of the FVRA.[185]

As far as it is useful, this legislative history confirms what the text makes clear. In enacting the FVRA, Congress severely limited the options for who may perform the functions and duties of a vacant PAS office.[186] A statutory interpretation that opens a gaping loophole in

---

[181] Revised Redacted Transcript of Proceedings ("Hearing Tr.") at 112:15-20, ECF no. 56 in *United States v. Garcia*, 1:25-cr-03549-JB (D. N.M.), filed Dec. 18, 2025 (referring to Reply Brief of Appellant at 24-26, *USA v. Giraud*, Nos. 25-2635, 25-2636, 2025 WL 2959736 (3d Cir. Oct. 14, 2025) ("*Giraud* Reply Brief")).

[182] *Giraud* Reply Brief at 25 (citing S. Rep. No. 105-250, at 17).

[183] *Id.* (citing S. Rep. No. 105-250, at 17).

[184] Order, Attorney General Pamela Bondi, Apr. 27, 2025.

[185] The following paragraph is taken nearly verbatim from *Giraud*, 795 F. Supp. 3d at 590.

[186] 5 U.S.C. § 3345(a).

this tightly crafted scheme meant to provide only limited flexibility and prevent "manipulation" flies in the face of the goal that Congress was trying to accomplish.

Therefore, Attorney General Bondi's August 14, 2025, order has no effect under 28 U.S.C. §§ 509, 510, and 515. The order does not, and could not, validly delegate all the duties and functions of the United States Attorney for the District of New Mexico to Mr. Ellison.

### 3.2.6   The August 14, 2025, Order Validly Designates Mr. Ellison as FAUSA as of the Date of the Order

The only effect of the August 14, 2025, order following Mr. Ellison's resignation as interim United States Attorney is that Mr. Ellison was validly designated as FAUSA for the District of New Mexico, as of the order's date. At oral argument and in their supplemental briefing, Defendants argued that Mr. Ellison's designation as FAUSA is invalid because it was made only to circumvent the term limitations of the FVRA and § 546(c), and because no United States Attorney is in place to which an FAUSA is subservient.[187] This argument was untimely raised and, regardless, lacks merit.

First, this record does show an apparent attempt by the administration to circumvent the term limitation of the FVRA and § 546(c) through Mr. Ellison's resignation as interim United States Attorney and his subsequent designation as FAUSA.[188] It does not however demonstrate that the *only* purpose of the Mr. Ellison's designation was to circumvent these statutes. Mr. Ellison worked as an AUSA in the District of New Mexico from November 2018 until his appointment as interim United States Attorney on April 17, 2025.[189] It is reasonable to infer from

---

[187] Response to Government's Supplemental Briefing at 4-6, ECF no. 57 in *United States v. Garcia*, 1:25-cr-03549-JB (D. N.M.), filed Dec. 18, 2025.

[188] Letter from Ryan Ellison, Aug. 13, 2025; Order, Attorney General Pamela Bondi, Designation of Ryan Ellison as First Assistant United States Attorney for the District of New Mexico, Aug. 14, 2025.

[189] Responses at 2-3; Order, Attorney General Pamela Bondi, Apr. 17, 2025.

the length of his service, which spanned multiple executive administrations, that Mr. Ellison is a career official with knowledge of the USAO for the District of New Mexico. And there is no record evidence that he lacks the qualifications or the ability to serve in the role of FAUSA. Defendants have also failed to identify sufficient legal authority demonstrating that the motive behind Mr. Ellison's designation somehow invalidates the designation.

A closer issue is whether a post-vacancy designation of a first assistant, such as Mr. Ellison's FAUSA designation, is valid. Under DOJ regulation, "[e]very office within the Department to which appointment is required to be made by the President with the advice of consent of the Senate . . . shall have a First Assistant within the meaning of the [FVRA and] . . . the First Assistant shall be the person whom the Attorney General designates in writing."[190] This seemingly clear regulation, however, becomes an issue in this case because the FVRA does not define "first assistant," though the FVRA uses the term in § 3345(a)(1)'s automatic ascension provision. There are also no statutory duties and functions made specific to an FAUSA. Defendants take all of this to mean that FAUSA is merely a label to identify the person that becomes Acting United States Attorney under § 3345(a)(1) upon a triggering vacancy.[191] This portion of Defendants' argument has some merit.

However, Defendants' argument takes the additional step in saying that when no PAS United States Attorney is in office, no FAUSA can be designated.[192] This is an unreasonably narrow reading of the DOJ regulation and the FVRA. Neither the regulation nor the FVRA place a limitation on when an FAUSA may be designated. The regulation plainly states that the

---

[190] 28 C.F.R. § 0.137(b).

[191] Supplemental Brief in Support of Motion to Dismiss Indictment and Disqualify United States Attorney at 2, ECF no. 53 in *United States v. Garcia*, 1:25-cr-03549-JB (D. N.M.), filed Dec. 5, 2025.

[192] Response to Government's Supplemental Briefing at 4-6.

designation is within the meaning of the FVRA.[193] This means that an FAUSA is meant to be the individual that automatically becomes Acting United States Attorney under § 3345(a)(1) upon a triggering vacancy.

The language of the § 3345(a)(1) plainly identifies "the first assistant *to the office*" of the PAS officer who triggers a vacancy.[194] This language does not necessarily tie a first assistant to a specific PAS officer. Rather, it ties a first assistant *to the office*. The language is reasonably read to contemplate that the office may have a first assistant designated despite the existence of a PAS officer's vacancy. As discussed,[195] the post-vacancy first assistant does not automatically become the acting officer under § 3345(a)(1). This is because the post-vacancy first assistant was not the first assistant when the vacancy was created. But the post-vacancy first assistant would be in line to automatically fill the role of acting officer under § 3345(a)(1) after a qualified PAS officer is in place and a new triggering vacancy event occurs.

Though a post-vacancy first assistant *may never* become the inferior to a PAS officer, it is speculation to say a post-vacancy first assistant *will never* become the inferior to a PAS officer.[196] Relevant to Defendant's Motions, a PAS United States Attorney for the District of New Mexico may still be qualified under 28 U.S.C. § 541(a). The post-vacancy designation of Mr. Ellison as FAUSA does not run afoul of the DOJ regulation or the FVRA. Therefore, Mr. Ellison validly became FAUSA for the District of New Mexico on August 14, 2025. But the

---

[193] 28 C.F.R. § 0.137(b).

[194] 5 U.S.C. § 3345(a)(1).

[195] *See* Section 3.2.4 and 3.2.5, *supra*.

[196] This is distinguishable from the situation in *L.M.-M. v. Cuccinelli*, where the District Court determined "Cuccinelli does not qualify as a 'first assistant' because he was assigned the role of principal on day-one and, by design, he never has served and *never will serve* 'in a subordinate capacity' to any other official.'" 442 F. Supp. 3d 1, 26 (D.D.C. 2020).

scope of Mr. Ellison's functions and duties as FAUSA are not defined by statute or regulation, and were not identified in the August 14, 2025, order.

### 3.2.7    The December 4, 2025, Order Does Not Authorize Mr. Ellison to Perform the Functions of the United States Attorney, but Define the Scope of His Functions as FAUSA

Following oral arguments on Defendants' Motions and the issuance of multiple rulings from other Districts rejecting the same arguments made by the USAO in this case, and perhaps realizing the deficiencies in the language of the August 14, 2025, order, Attorney General Bondi issued an order on December 4, 2025.[197] The December 4, 2025, order purports to confirm the August 14, 2025, order.[198]

However, as discussed,[199] the effect of the August 14, 2025, order was only a valid designation of Mr. Ellison as FAUSA for the District of New Mexico. And in spite of its fulsome title, the December 4, 2025, order does not authorize Mr. Ellison to perform the functions of the United States Attorney.[200] Rather, the order's text more modestly delegates only the "delegable, nonexclusive functions of the United States Attorney for the District of New Mexico while the position of United States Attorney remains vacant" including "authority to supervise and conduct legal proceedings in that district" and "supervising the conduct of Assistant United States Attorneys and Special Assistant United States Attorneys working on such proceedings."[201]

The limited delegation within the December 4, 2025, order does not run afoul of the FVRA's bar set forth in 5 U.S.C. § 3347(b). And Attorney General Bondi has the power and

---

[197] Order, Attorney General Pamela Bondi, Authorizing Ryan Ellison to Perform the Functions of the United States Attorney for the District of New Mexico, Dec. 4, 2025.

[198] *Id*.

[199] *See* Sections 3.2.4, 3.2.5, and 3.2.6, *supra*.

[200] Order, Attorney General Pamela Bondi, Authorizing Ryan Ellison to Perform the Functions of the United States Attorney for the District of New Mexico, Dec. 4, 2025.

[201] *Id*.

authority to make such delegations under 28 U.S.C. § 510.[202] Even if Mr. Ellison was not validly designated as FAUSA by the August 14, 2025, order, the limited delegations within the December 4, 2025, order would remain valid. It may be that Congress did not intend, in passing § 510, to provide a backdoor around § 3347(b) for a significant portion of the functions of a United States Attorney. But that is the practical effect in this case.

The December 4, 2025, order does not delegate to or confer upon Mr. Ellison all the functions and duties of the United States Attorney. Nor could it, as discussed regarding the USAO's delegation arguments for the August 14, 2025, order.[203] The December 4, 2025, order also does not provide a valid basis for Mr. Ellison to be, or claim to be, the Acting United States Attorney for the District of New Mexico. However, the permissible limited delegation of functions in the December 4, 2025, order do define the scope of Mr. Ellison's functions and duties in his role as FAUSA. These functions and duties include "authority to supervise and conduct legal proceedings" in the District of New Mexico and "supervising the conduct of Assistant United States Attorneys and Special Assistant United States Attorneys working on such proceedings."[204]

---

[202] Defendants identified several functions and duties of United States Attorneys that they argue are nondelegable. Supplemental Brief in Support of Motion to Dismiss Indictment and Disqualify United States Attorney at 3-10. However, the limited delegations within the December 4, 2025, order do not involve any of the identified nondelegable functions and duties. Indeed, the only identified nondelegable function relevant to Defendants' Motions is the certification of juvenile cases under 18 U.S.C. § 5032. But Defendant SEALED concedes that the Certification signed by Hope S. Olds satisfies the requirements of § 5032. Certification, ECF no. 48 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Oct. 24, 2025; Reply in Support of Supplemental Memorandum, ECF no. 55 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Nov. 5, 2025. Thereby, the issue in Defendant SEALED's case is mooted.

[203] *See* Section 3.2.5, *supra*.

[204] Order, Attorney General Pamela Bondi, Authorizing Ryan Ellison to Perform the Functions of the United States Attorney for the District of New Mexico, Dec. 4, 2025.

### 3.2.8   Summary of the Quandary

The USAO continues executive assertions of consent Congress has not granted:

> [I]t was valid for Congress to authorize the Attorney General, as Head of the Department of Justice, to designate Mr. Ellison as First Assistant U.S. Attorney and thereby make him Acting U.S. Attorney by virtue of the FVRA.[205]

When asked during oral argument if the USAO's reading of the statutes is that "in spite of [§] 541 saying that the U.S. Attorney is appointed by the President and confirmed by the Senate, there is a scheme intentionally selected by Congress and the statute to allow the perpetual appointment of Attorney General-selected U.S. Attorneys,"[206] counsel responded: "[W]e don't see statutory language constraining that choice."[207]

The USAO's reading of the statutory scheme for temporarily filling vacant PAS offices is incorrect. Mr. Ellison was a valid interim United States Attorney for the District of New Mexico under § 546(a).[208] But he is not, and was never, a valid Acting United States Attorney for the District of New Mexico under § 3345(a)(1).[209]

The USAO's arguments for the Attorney General's general delegation authority permitting delegation of all of the functions and duties of a United States Attorney to Mr. Ellison are also incorrect. Mr. Ellison has not been, and cannot be, delegated all of the functions and duties of a United States Attorney.[210]

---

[205] Responses at 19.

[206] Hearing Tr. at 91:8-12.

[207] *Id*. at 91:16-17.

[208] *See* Section 3.2.3, *supra*.

[209] *See* Sections 3.2.4, 3.2.5, 3.2.6, 3.2.7, *supra*.

[210] *See* Sections 3.2.5, 3.2.7, *supra*.

Nevertheless, Mr. Ellison is the validly designated FAUSA for the District of New Mexico.[211] And the limited delegation of functions and duties to Mr. Ellison made by Attorney General Bondi's December 4, 2025, order are validly within the Attorney General's powers to make.[212] The FVRA's exclusivity provision ignores realities of statutory conflicts and was a short-sighted superficial solution. The practical effect is seen here. Congress has clearly declared that the functions and duties of a United States Attorney will be fully exercised only by those whom they have confirmed. Congress has specifically consented to interim § 546(a) and acting § 3345(a) appointments. The front door is clearly marked, but Congress has also invested the Attorney General with sufficient power to appoint, without Senate confirmation, subordinates with nearly all the powers of the United States Attorney. Thus, the Attorney General is using the easier backdoor. The lesson for Congress may be that careful statutory language is necessary when regulating lawyers.

### 3.3    Remedies

Defendants seek to void the actions of the USAO that occurred after Mr. Ellison's August 13, 2025, resignation as interim United States Attorney, including decisions to file and continue to pursue charges against them.[213] And Defendants seek to disqualify Mr. Ellison, and any attorneys acting under his direction, from any role in supervising and participating in their cases.[214] However, as it is, while Mr. Ellison is not validly acting as United States Attorney for the District of New Mexico, he is the validly designated FAUSA.[215] And Attorney General

---

[211] *See* Section 3.2.6, *supra*.

[212] *See* Section 3.2.7, *supra*.

[213] Motions at 2, 22-26.

[214] *Id*.

[215] *See* Section 3.2.4, 3.2.5, and 3.2.6, *supra*.

Bondi has delegated to him "authority to supervise and conduct legal proceedings" in the District of New Mexico and "supervising the conduct of Assistant United States Attorneys and Special Assistant United States Attorneys working on such proceedings."[216] Neither dismissal of Defendants' indictments and charges, nor disqualification of Mr. Ellison or any other attorneys within the USAO are appropriate remedies under the circumstances.

### 3.3.1 Dismissal of Defendants' Indictments and Charges is not a Proper Remedy[217]

Under 28 U.S.C. § 3348(d)(1), any "action taken by any person who is not acting under section 3345, 3346, or 3347 . . . in the performance of any function or duty of a vacant office" to which the FVRA applies "shall have no force or effect."[218] And "[a]n action that has no force or effect under paragraph (1) may not be ratified."[219] But § 3348(d)(1)'s "no force or effect" directive is narrowly cabined.

Under subsection (d)(1), even if a person was improperly appointed and, thus, was "not acting under section 3345, 3346, or 3347," only that person's "performance of any function or duty" of the office has "no force or effect." In turn, "function or duty" has a specific and limited definition for purposes of § 3348:

> [T]he term "function or duty" means any function or duty of the applicable office that—
>
> (A)(i) is established by statute; and
>
> (ii) is required by statute to be performed by the applicable officer (*and only that officer*); or

---

[216] *See* Section 3.2.7, *supra*; Order, Attorney General Pamela Bondi, Authorizing Ryan Ellison to Perform the Functions of the United States Attorney for the District of New Mexico, Dec. 4, 2025.

[217] This section is taken nearly verbatim from *Ramirez*, 2025 WL 3019248, at *13–17.

[218] 5 U.S.C. § 3348(d)(1).

[219] *Id*. § 3348(d)(2).

(B)(i)(I) is established by regulation; and

(II) is required by such regulation to be performed by the applicable officer (*and only that officer*); and

(ii) includes a function or duty to which clause (i)(I) and (II) applies, and the applicable regulation is in effect at any time during the 180-day period preceding the date on which the vacancy occurs.[220]

In *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, the Ninth Circuit Court of Appeals interpreted § 3348(a)(2)'s phrase "function or duty" and its qualifier "and only that officer," and concluded that "[a] 'function or duty' under § 3348 must be exclusive to the officer, or nondelegable . . . ."[221] The Ninth Circuit agreed with other Circuits that interpreted "function or duty" for purposes of § 3348 to mean *nondelegable* functions or duties.[222] It applied that reading to the "ratification bar" in § 3348(d)(2), under which the actions of an improperly appointed person under the FVRA not only lack "any force and effect" under § 3348(d)(1) but also "may not be ratified" later by a properly appointed person. The Ninth Circuit concluded that because the improperly appointed officer had performed delegable duties, ratification was not barred.[223]

By the same logic, it follows that so long as an improperly appointed person was performing delegable duties, the actions would not be subject to the "no force and effect" directive in § 3348(d)(1). Effectively, § 3348(d)(1) reads "[a]n action taken by any person who is not acting under section 3345, 3346, or 3347 [of the FVRA] . . . in the performance of any [*nondelegable*] function or duty of a vacant office to which [the FVRA's provisions] apply shall

---

[220] *Id.* § 3348(a)(2) (emphasis added).

[221] 107 F.4th 1064, 1074 (9th Cir. 2024).

[222] *Id.* at 1075 (citing *Kajmowicz v. Whitaker*, 42 F.4th 138, 148–49 (3d Cir. 2022)).

[223] *Id.* at 1076.

have no force or effect." That is, actions that are delegable are not nullified. Only the performances of nondelegable duties are "of no force and effect." This logic is persuasive.

Here, Defendants' indictments did not result from duties or functions that only the United States Attorney could have performed;[224] they were obtained by AUSAs after presentment to a grand jury, and signed by AUSAs (not by Mr. Ellison) exercising powers delegated from the Attorney General.[225] Further, approving or authorizing Defendants' indictments are acts that can be performed by others and are delegable duties.[226] Therefore, § 3348(d)(1) provides no basis to nullify the challenged actions of Mr. Ellison and dismissed Defendants' indictments and charges.

Defendants also argue that their indictments should be declared void and dismissed because Mr. Ellison acted without lawful authority in supervising, approving, and appearing in the papers filed in their cases as Acting United States Attorney. Defendants Ramirez-Martinez and Brady—having been indicted by a prior regime—also seek dismissal based on Mr. Ellison's presumed ongoing supervision of their cases. But nothing in the record indicates that any presumed role Mr. Ellison might have had in approving the indictments prejudiced the grand jury

---

[224] While Defendant SEALED's charges required certification under 18 U.S.C. § 5032 by a United States Attorney, Defendant SEALED concedes that the Certification singed by Hope S. Olds satisfies the requirements of § 5032. Certification, ECF no. 48 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Oct. 24, 2025; Reply in Support of Supplemental Memorandum, ECF no. 55 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Nov. 5, 2025. Therefore, the certification signed by Mr. Ellison is superseded and the issue is moot.

[225] *See, e.g.*, 28 U.S.C. §§ 510 (Delegation of authority by Attorney General), 542 (Assistant United States attorneys appointed by the Attorney General); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008) ("Assistant United States Attorneys derive their power to prosecute directly from the Attorney General, not from a United States Attorney.").

[226] *See, e.g., Kelly v. United States*, 989 F.3d 67, 71 (1st Cir. 2021) (rejecting challenge to indictment because of "unrebutted affidavit testimony that the United States Attorney, *through his designees*, reviewed and approved the indictment") (emphasis added); *United States v. Weyhrauch*, 544 F.3d 969, 974 (9th Cir. 2008) ("Under 28 U.S.C. § 515(a) and 28 C.F.R. § 0.13(a), the Attorney General and other senior-level DOJ personnel can authorize department attorneys to conduct 'any legal proceeding . . . which United States attorneys are authorized to conduct.'").

process.[227] And just as important, it is undisputed that the indictments here were signed by

AUSAs—proper "attorney[s] for the government"—in compliance with Federal Rule of

Criminal Procedure 7(c)(1).[228]

      The grand jury "is a constitutional fixture in its own right."[229] It "is not and should not be

captive to any of the three branches."[230] Defendants have not shown a due process violation or

misconduct before the grand jury. Nor have Defendants argued that the grand jury was not

properly constituted, or that their indictments are otherwise defective under Federal Rule of

Criminal Procedure 12(b)(3). Even if Mr. Ellison's presumed action in approving Defendants'

indictments were voided, they were still signed by AUSAs and are otherwise proper in form and

content. This is all that was needed.[231]

      Defendants also rely on *United States v. Trump*, which dismissed an indictment after

concluding that Special Counsel Jack Smith was improperly appointed.[232] The District Court in

*Trump* concluded that because Special Counsel Smith's appointment "violat[ed] the

Appointments Clause . . . the actions of Special Counsel Smith in connection with this

proceeding must be set aside."[233] *Trump* is not binding and, in any event, is distinguishable

---

[227] *See, e.g., Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) ("[D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor J., concurring)).

[228] *See* Fed. R. Crim. P. 1(b)(1)(B), (D) (defining "attorney for the government" as including "an authorized assistant" of a United States Attorney or "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor.").

[229] *United States v. Williams*, 504 U.S. 36, 47 (1992) (quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977)).

[230] *Chanen*, 549 F.2d at 1312.

[231] *Cf. Baldwin*, 541 F. Supp. 2d at 1214 ("Assuming that the appointment of an interim U.S. Attorney, pursuant to § 546(d) violated the Constitution, indictments filed during the tenure of the appointee would still be valid if an authorized Assistant U.S. Attorney signed them.").

[232] 740 F. Supp. 3d 1245 (S.D. Fla. 2024), *appeal dismissed*, 2025 WL 2017539 (11th Cir. Feb. 11, 2025).

[233] *Id.* at 1303.

because the indictments at issue here were signed by other attorneys for the United States, but in *Trump* the indictment had been signed by Special Counsel Smith alone.[234] Further, in *Trump*, Special Counsel Smith's "involvement in the case had been essentially ubiquitous, and critically included his seeking of the Superseding Indictment on which the proceeding hinged."[235] Here, in contrast, there is no indication that Mr. Ellison had any involvement in Defendants' indictments or the ongoing prosecution of Defendants' cases.

Defendants also rely on *United States v. Kilpatrick*[236] in seeking dismissal based on the district court's supervisory powers as a sanction for government misconduct to remedy the violation of recognized rights, to protect judicial integrity, and to deter illegal conduct.[237] But as reasoned earlier, there has been no showing that Mr. Ellison's supervision as the claimed Acting United States Attorney improperly interfered with the grand jury process or led to any other specific actions that prejudiced Defendants. The record indicates that the prosecution's substantive actions in Defendants' cases have been performed by lawfully appointed AUSAs. There has been no showing of a need for dismissal, much less the drastic remedy of dismissal with prejudice.

In support of dismissal or other remedies, Defendants point out that the administration has repeatedly attempted to utilize similar methods of installing Acting United States Attorneys in the Districts of New Jersey and Nevada, the Central District of California, and the Eastern

---

[234] *See Garcia*, 2025 WL 2784640, *15 (distinguishing *Trump* on that ground); *United States v. Giraud*, 2025 WL 2196794, *7 (D.N.J. Aug 1, 2025) (same).

[235] *Giraud*, 2025 WL 2196794, *7 (footnote and editorial marks omitted).

[236] 821 F.2d 1456, 1465 (10th Cir. 1987).

[237] Motions at 23.

District of Virginia (among others).[238] But when Mr. Ellison claimed to be in the acting role on August 13, 2025, no court had disapproved of the practice. And certainly, the statutes and legal issues surrounding the filling of vacant PAS offices are complicated. In the present posture, the court finds no reason to impose a remedy of dismissal with prejudice, or dismissal without prejudice, merely because the USAO did not concede and chose to resist efforts to dismiss indictments and disqualify Mr. Ellison in this District. The proceedings and actions of the government in Defendants' cases have not reached a stage or level where sanctions for government misconduct conduct are appropriate.

### 3.3.2 Disqualification of Mr. Ellison or Other Attorneys in the USAO is not a Proper Remedy[239]

Mr. Ellison is not validly acting as United States Attorney for the District of New Mexico.[240] His future actions claimed to be taken in that capacity would include actions that are void or voidable, as he would be exercising power that he does not lawfully possess.[241] Mr. Ellison cannot continue to perform any role as Acting United States Attorney, including prosecuting or supervising these cases in that role. If he were to do so, his actions would violate the FVRA's exclusivity provisions set forth in § 3347(a)(1).

However, Mr. Ellison was validly designated as FAUSA for the District of New Mexico,[242] and he remains the FAUSA. He was also validly delegated "authority to supervise

---

[238] *See Giraud*, 795 F. Supp. 3d 560 (D.N.J.); *Garcia*, 2025 WL 2784640 (D. Nev.); *Ramirez*, 2025 WL 3019248 (C.D. Cal.); *Comey*, 2025 WL 3266932 (E.D. Va.).

[239] This section is taken nearly verbatim from *Ramirez*, 2025 WL 3019248, *18–19.

[240] *See* Sections 3.2.4, 3.2.5, 3.2.7, *supra*.

[241] *See Giraud*, 2025 WL 2196794, *8 (citing *Collins v. Yellen*, 594 U.S. 220, 258 (2021)); *cf. Lucia v. S.E.C.*, 585 U.S. 237, 251 (2018) ("[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." (quoting *Ryder v. United States*, 515 U.S. 177, 183, 188, (1995))).

[242] *See* Section 3.2.6, *supra*.

49

and conduct legal proceedings" in the District of New Mexico and "supervising the conduct of Assistant United States Attorneys and Special Assistant United States Attorneys working on such proceedings."[243] There is no basis to preclude Mr. Ellison from performing the lawful duties of an FAUSA, and those functions that were validly delegated to him. And there is no basis to disqualify from Defendants' cases other attorneys in the USAO that Mr. Ellison supervises.

Contrary to Defendants' arguments, if Mr. Ellison supervises the prosecutions of Defendants' cases as the FAUSA, he would not be doing so in violation of the FVRA. That statute precludes him from serving as Acting United States Attorney. The FVRA says nothing about other duly-authorized positions and validly delegated duties and functions. That is, Mr. Ellison would not be continuing to wield the United States Attorney's title, functions, and powers if he acts as FAUSA. This is so even if the office of the United States Attorney for the District of New Mexico remains vacant until someone is qualified for the PAS office.[244] Until then, the Attorney General may perform the non-delegable functions and duties of the United States Attorney.[245] And, through various provisions, the Attorney General may delegate many, if not most, of those duties to other officials.[246]

This result stems largely from the statutes and regulations that establish the structure of the DOJ and define the Attorney General's duties and powers. Those statutes and regulations permit the delegation of many—if not most—of the Attorney General's duties. They permit the

---

[243] *See* Section 3.2.7, *supra*; Order, Attorney General Pamela Bondi, Authorizing Ryan Ellison to Perform the Functions of the United States Attorney for the District of New Mexico, Dec. 4, 2025.

[244] *See* 5 U.S.C. § 3348(b)(1).

[245] *See id.* § 3348(b)(2).

[246] *See, e.g.*, 28 U.S.C. §§ 509, 510, 515, 516, 519, 542, and 543; 28 C.F.R. § 0.137.

appointment of officers to perform those delegated duties. And they authorize AUSAs to perform duties that are not exclusive to the office of the United States Attorney.[247]

The FVRA, however, does not deal only with vacancies in the DOJ. It is a broader statute, addressing acting service across a wide range of PAS offices throughout the Executive branch—many of which may be governed by statutes or regulations defining "functions and duties" in more restrictive terms and limiting authority to delegate.[248]

This result appears to be little remedy at all. The DOJ "should not be able to accomplish effectively what the statute says [it] cannot do outright."[249] The district court's role, however, is to apply the statutes as written and as interpreted by binding case law. The result—that Mr. Ellison may perform certain functions and duties as FAUSA and as validly delegated—stems from the power of the Attorney General to delegate authority. "But concerns regarding the current ability of department heads to delegate authority do not sound in statutory interpretation; rather, they are concerns of 'undesirable policy consequences.'"[250] "[The district court] cannot concern [itself] with policy consequences. 'The place to make new legislation, or address unwanted consequences of old legislation, lies in Congress.'"[251]

---

[247] *See, e.g., Baldwin*, 541 F. Supp. 2d at 1196 ("Assistant United States Attorneys derive their power to prosecute directly from the Attorney General, not from a United States Attorney."); *Weyhrauch*, 544 F.3d at 974 ("Under 28 U.S.C. § 515(a) and 28 C.F.R. § 0.13(a), the Attorney General and other senior-level DOJ personnel can authorize department attorneys to conduct "any legal proceeding . . . which United States attorneys are authorized to conduct.").

[248] *See, e.g., Gonzalez*, 107 F.4th at 1080 ("[E]ven assuming various department heads can delegate virtually all of their functions or duties, this does not change Congress's authority under the current statutory regime to alter the scope of those delegations, as it has done before.") (citing several statutes that limit delegation of powers of department heads); *NLRB*, 796 F.3d at 80 (discussing the role of the General Counsel of the National Labor Relations Board and stating that "if the General Counsel's office were vacant, the NLRB would not be issuing complaints.") (internal quotation marks and citation omitted), *affirmed*, 580 U.S. 288 (2017).

[249] *Ramirez*, ECF No. 47 at PageID#502 (hearing transcript).

[250] *Gonzales*, 107 F.4th at 1080 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 680 (2020)).

[251] *Id.* (quoting *Bostock*, 590 U.S. at 680–81).

## 4   ORDER

IT IS HEREBY ORDERED that Defendants' Motions[252] are GRANTED in part and

DENIED in part.

Mr. Ellison is not, and was never, a validly acting as United States Attorney for the

District of New Mexico under § 3345(a)(1). He has been invalidly claiming to serve in that

capacity since his resignation as interim United States Attorney on August 13, 2025. Mr. Ellison

may not perform the functions and duties of the United States Attorney as Acting United States

Attorney. And any claim, assertion, or statement of Mr. Ellison, the USAO, or the administration

that he is the Acting United States Attorney, or interim United States Attorney, or United States

Attorney is improper and inaccurate. After entry of this Memorandum Decision and Order,

papers filed with those designations in these cases are improper and should be stricken.

---

[252] Defendant's Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 111 in *United States v. Ramirez-Martinez*, 1:22-cr-01721-KWR (D.N.M.), filed Sept. 17, 2025; Defendant's Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 100 in *United States v. Brady*, 1:24-cr-01105-MLG (D.N.M.), filed Sept. 16, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 21 in *United States v. Esqueda*, 1:25-cr-03250-JB (D.N.M.), filed Oct. 1, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 20 in *United State v. Chee*, 1:25-cr-03353-JB (D.N.M.), filed Sept. 30, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 20 in *United States v. Black*, 1:25-cr-03354-MLG (D.N.M.), filed Sept. 10, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 19 in *United States v. Kee*, 1:25-cv-03356-KG (D.N.M.), filed Sept. 16, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, EFC no. 16 in *United States v. Gunther*, 1:25-cr-03366-JB (D.N.M.), filed Sept. 15, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 16 in *United States v. Garcia*, 1:25-cr-03549-JB (D.N.M.), filed Sept. 12, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 22 in *United States v. SEALED*, 1:25-cr-03837-MLG (D.N.M.), filed under seal Oct. 7, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 21 in *United States v. Poellnitz*, 1:25-cr-03858-KG (D.N.M.), filed Oct. 1, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 18 in *United States v. Dominguez*, 1:25-cr-03864-KG (D.N.M.), filed Oct. 14, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 19 in *United States v. Sedillo*, 1:25-cr-03865-JB (D.N.M.), filed Nov. 3, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 15 in *United States v. Lopez*, 1:25-cr-04139-DHU (D.N.M.), filed Oct. 30, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 20 in *United States v. Grey*, 1:25-cr-04141-KG (D.N.M.), filed Nov. 3, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 18 in *United States v. Cleveland*, 1:25-cr-04145-DHU (D.N.M.), filed Oct. 16, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 17 in *United States v. Archuleta*, 1:25-cr-04412-DHU (D.N.M.), filed Nov. 3, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 26 in *United States v. Benally*, 1:25-cr-04413-KG (D.N.M.), filed Nov. 4, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 17 in *United States v. McAfee*, 1:25-cr-04418-MLG (D.N.M.), filed Nov. 3, 2025; Motion to Dismiss Indictment and Disqualify United States Attorney, ECF no. 20 in *United States v. Martinez*, 2:25-cr-03253-SMD (D.N.M.), filed Sept. 10, 2025.

However, Defendants' indictments and charges will not be dismissed, as they were lawfully signed by other attorneys for the government and there has been no showing of due process violations or other irregularities in Defendants' prosecutions resulting from Mr. Ellison's claimed service as Acting United States Attorney. Mr. Ellison also remains the FAUSA for the District of New Mexico and may perform the functions and duties of *that* position and as validly delegated by Attorney General Bondi's December 4, 2025, order. This includes "authority to supervise and conduct legal proceedings" in the District of New Mexico and "supervising the conduct of Assistant United States Attorneys and Special Assistant United States Attorneys working on such proceedings."[253] And neither Mr. Ellison nor other attorneys of the USAO are disqualified from Defendants' cases.

Signed January 14, 2025.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[253] Order, Attorney General Pamela Bondi, Authorizing Ryan Ellison to Perform the Functions of the United States Attorney for the District of New Mexico, Dec. 4, 2025.